the appointment of a guardian ad litem should have been vacated, and the default opened without terms.

Order reversed, default opened, judgment vacated, and new trial ordered, with costs to appellants to abide the event. All concur.

---

PEOPLE ex rel. LEDERMAN v. WARDEN OF CITY PRISON.

(Supreme Court, Appellate Division, First Department. April 30, 1915.)

PHYSICIANS AND SURGEONS &wkey;6—PRACTICING WITHOUT AUTHORITY—STAT-
UTES—"PRACTICE OF MEDICINE."

Under Public Health Law (Consol. Laws, c. 45) § 160, subd. 7, defining the "practice of medicine" as consisting in holding one's self out as being able to diagnose or treat human diseases and offering such treatment, and section 174, making one practicing or advertising the practice of medicine under a name other than his own guilty of a misdemeanor, defendant, a duly registered physician, who transacted business under the duly adopted trade-name "The Standard Pharmacy Company," and at whose office a caller was examined, given a prescription, filled and paid for at the desk, without charge for the medical service, and whose office contained signs indicating that he was engaged in the manufacture of certain remedies, that he employed a consulting physician to whom patrons might go for free medical advice, whose booklet of advertisements contained a coupon for consultation and free advice, and whose cards for free examination, inscribed "Medical and Surgical Office of the Standard Pharmacy Company," requested its physician to make examination and give medical advice to the bearer without charge, was practicing medicine unlawfully by holding himself out under his trade-name as able to diagnose and treat diseases, and as offering and undertaking to do so.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 6–11; Dec. Dig. &wkey;6.

For other definitions, see Words and Phrases, First and Second Series, Practice of Medicine.]

Appeal from Special Term, New York County.

Habeas corpus by the People of the State of New York, on the relation of Morris Lederman, against the Warden of the City Prison. From an order of Special Term, dismissing the writ and remanding relator, he appeals. Affirmed.

The opinion below of Bijur, J., was as follows:

The relator, having been held by a magistrate to answer to the Court of Special Sessions, applies for a writ of habeas corpus. He was charged with practicing medicine unlawfully in violation of section 174 of the Public Health Law. Subdivision 7 of section 160 of that act defines the practice of medicine, and indicates in substance that it consists in holding one's self out as being able to diagnose or treat human diseases, and offering or undertaking such treatment. This factor of holding out apparently underlies all the important cases in which the defendant has been held for violation of the law. There have been laid before me, without objection, by the respective counsel, extracts from the record in these cases. In People v. Woodbury Dermatological Institute, 192 N. Y. 454, 85 N. E. 697 the advertisements announced that "the Woodbury method succeeds, because it entirely removes these dead cells;" "we perfect baggy skin;" "we correct unshapely noses," etc.; "we remove freckles," etc.; "by methods of our own, we extract these dead cells;" "all remedies prescribed by us are scientifically prepared in our private labora-

tories." In the case of People v. Doctor Weeks Medical Institute, 126 App. Div. 950, 111 N. Y. Supp. 1134, in which the judgment against the defendant below was affirmed on the authority of the Woodbury Case, 124 App. Div, 877, 109 N. Y. Supp. 578, the advertisements read: "We treat all private and chronic diseases;" "we cure by the best of medical ability;" "Dr. Weeks' Medical Office, specialist for nervous and chronic diseases;" "we cure all cases we undertake." In People v. Samuel Gross, decided in the Court of Special Sessions in November, 1911, the defendant was the proprietor of an institution known as the Workingmen's Medical Aid Society. One of the circulars contained the statement: "It is the object of the Workingmen's Medical Aid Society to furnish reliable medical service to members and their families."

These various institutions therefore plainly held themselves out to diagnose and treat diseases just as do hospitals and dispensaries, but without the authority which such establishments expressly enjoy. As pointed out in the opinion in the Woodbury Case in the Court of Appeals, at page 458 of 192 N. Y., at page 699 of 85 N. E., the statute expressly provides that they may specify in their certificate of incorporation "the systems of medical practice or treatment to be used or applied." The Woodbury, Weeks, and Gross institutions announced that they themselves undertook to diagnose and to treat. The question therefore arises whether the relator is properly chargeable with the same offense. The evidence on which he was held is uncontradicted. He transacted business under the duly adopted trade-name "The Standard Pharmacy Co." The testimony is that a lady called at the office of this "company," inquired whether the doctor was in, and on receiving an affirmative answer, was referred to him. He is a duly licensed physician. He examined her, gave her a prescription, refused to receive any compensation, she had the prescription filled at the desk and paid therefor, and was again told that no charge would be made for the medical service.

In addition to this evidence the record contains copies of the inscriptions on signs around the relator's establishment, a booklet of advertisements, and a "card for free examination." The signs are perhaps fairly beyond the purview of the statute. They read as follows: (a) "Standard Pharmacy Co." (b) "Doctor's Office. Examination of urine. Electrical treatment. X-ray examination and other modern scientific methods." (c) "Standard Pharmacy Co. Medical Office. Entrance through Drug Store." (d) "Manufacturers of Standard Remedies." (e) "Examination of urine in order to determine the nature of the disease, and also to show a complete and reliable cure by our consulting specialist, free to our patrons who are using our valuable, well-tried, reliable and guaranteed prescriptions. The celebrated Standard Remedies." These signs may be interpreted as indicating merely that the relator is engaged in the manufacture of certain remedies; that he employs a physician, to whom patrons of his establishment may go for free medical advice, although the phrase "Standard Pharmacy Co. Medical Office," is rather suggestive. It might, however, be claimed that a medical office imported no more than a place where medicines might be obtained. The same may be said of the contents of the booklet. One page contains, among others, the statement: "Coupon. Free medical advice to patrons. * * * Consultation, examination, and advice free by the consulting specialist of the Standard Pharmacy Co." This might be regarded as unobjectionable, but the same cannot be said so clearly of the further recital: "The medical office of the Standard Pharmacy Co. is fitted up in the most complete manner with all the latest scientific medical and surgical apparatuses."

Without reviewing further extracts from this booklet, it may be said, however, that the doubts which I entertain as to the legal propriety of the advertisements might properly be resolved in plaintiff's favor, were it not for the card for free examination above referred to. This reads as follows: "Card for free examination. Medical and surgical office of the Standard Pharmacy Co., 321–323 Bowery, corner 2d Street, New York, ...... 191... To the Doctor: Please make examination and give medical advice to bearer, who is now using     , and charge same to Standard Pharmacy Co. Per     Make no charge to holder of card." On the reverse side: "Office hours—Daily, 12:30 to 2; evenings, 5 to 6:30 and 8 to 9; Sundays, 12 to 2."

I cannot regard this card as other than an announcement that the Standard Pharmacy Company maintains a medical and surgical office, in charge of its doctor, who gives its patrons examination and medical advice on its behalf. I think that the relator holds himself out under his trade-name as being able to diagnose and treat diseases and offers and undertakes to do so.

The writ is therefore dismissed, and relator remanded.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

J. L. Bernstein, of New York City, for appellant.
R. C. Taylor, of New York City, for respondent.

PER CURIAM. Order affirmed, on the opinion of Bijur, J., at Special Term. Order filed.

---

### BAFF v. WEIDEN.

(Supreme Court, Appellate Term, First Department.    May 5, 1915.)

LANDLORD AND TENANT ☞184—AGREEMENT FOR LEASE—DEPOSIT AS SECURITY —PENALTY.

A deposit by a prospective tenant with the landlord of a specified sum "as security on the lease" is a deposit as security for any damage the landlord may suffer by the tenant's failure to carry out his agreement.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 743–750; Dec. Dig. ☞184.]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Fannie Baff, as administratrix of Bernard Baff, deceased, against Herman J. Weiden. From a judgment for defendant on his counterclaim to plaintiff's action, plaintiff appeals. Reversed, and judgment ordered for plaintiff.

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

Harry A. Gordon, of New York City (Reuben Tally, of New York City, of counsel), for appellant.

O'Neil & O'Neil, of Brooklyn (Paul Victor O'Neil, of Brooklyn, of counsel), for respondent.

HENDRICK, J. The plaintiff desired to rent defendant's cottage for the summer season and agreed to pay the sum of $450 therefor. He made a deposit of $50 and agreed to sign a formal lease. After the lease was presented, plaintiff refused to sign it, claiming defendant did not make certain repairs agreed to. He sues to recover his deposit. Defendant resists the suit, claiming plaintiff failed to live up to his contract, to defendant's damage.

The trial justice's finding in favor of the defendant on the facts is supported by the evidence and should not be disturbed. He, however, erred in granting judgment to defendant for $47.50. The nature of the deposit was conceded by both counsel:

"That the plaintiff deposited the sum of $50 * * * as security on the lease. * * *"

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes